**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,
                    Plaintiff.

         -v-                                        1:25-CR-411 (AJB/DJS)

JAEL WATTS and LUIS PINO-COPETE,

                    Defendants.

---

**Hon. Anthony Brindisi, U.S. District Judge:**

**<u>DECISION and ORDER</u>**

## I.      INTRODUCTION

On December 4, 2025, the United States of America (the "Government") obtained a twelve-count superseding indictment that charges defendant Jael Watts ("Watts") with ten counts of wire fraud, one count of aggravated identity theft, and one count of conspiring with her co-defendant and husband Luis Pino-Copete ("Pino-Copete") to commit wire fraud.  Dkt. No. 62.

On January 23, 2026, Watts moved *pro se* to: (1) sever her case from her co-defendant; and (2) compel certain discovery.  Dkt. No. 100, 101.  The Government has opposed.  Dkt. No. 105.  The motions have been fully briefed and will be considered on the basis of the submissions without oral argument.

## II.     BACKGROUND[1]

Watts and Pino-Copete ran a tax-exempt organization called Pearl Transit.  Pearl Transit claimed to provide transportation and community outreach services to the elderly and disabled in

---

[1]  This brief recitation of the facts is based on a review of the docket, including the affidavit in support of the criminal complaint, Dkt. No. 1, and the allegations in the superseding indictment, Dkt. No. 62.

several states, including New York.  Watts served as Pearl Transit's Operations Manager and Pino-Copete served as the company's Vice President of Operations.

In March of 2022, Pearl Transit applied for funding through a State-Federal program that helps meet the transportation needs of the elderly and disabled.  Watts signed this application herself and allegedly forged the signature of an attorney on the document, too.  Later, in December of 2023, Watts signed a contract on behalf of Pearl Transit to provide transportation services to New York State customers.  This contract was worth about $1,275,550, with a substantial portion of this sum being eligible for reimbursement under the State-Federal program mentioned above.

In September and October of 2024, Pearl Transit submitted several reimbursement requests to New York State.  State auditors reviewed those requests and sought additional documentation from the company to support the claimed expenses.  In response to those inquiries, Watts enlisted the help of her husband to fabricate and submit supporting documentation: driver payroll expenses, employee and driver names, direct deposit details, ride history information from the relevant time period, and Pearl Transit's office locations.  According to the Government, an investigation has revealed that many of the assertions contained in these supporting documents are false.

On July 18, 2025, a Special Agent with the U.S. Department of Transportation swore out a criminal complaint that charged Watts with wire fraud.  Dkt. No. 1.  Watts was arrested.  *See* Dkt. No. 3.  At her initial appearance, U.S. Magistrate Judge Daniel J. Stewart appointed the Office of the Federal Public Defender ("OFPD") to represent her.  Dkt. No. 9.  The Government moved for detention.  *See* Dkt. No. 13.

Watts was remanded to federal custody at the Albany County Correctional Facility pending a detention hearing.  *See* Dkt. No. 26.  Soon after, Judge Stewart conducted the hearing and ordered Watts detained on August 19, 2025.  *Id*.  She appealed, Dkt. No. 28, but this Court rejected her

arguments and affirmed.  Dkt. No. 45.  Watts took a further appeal of the detention order to the

U.S. Court of Appeals for the Second Circuit, Dkt. No. 53, which likewise rejected her arguments

and affirmed.  Dkt. No. 109.  Pino-Copete has since been arrested as well.  *See* Dkt. No. 80.

On August 29, 2025, Watts moved to defend herself in this action *pro se*.  Dkt. No. 36.

Judge Stewart promptly held a representation hearing.  There, he relieved the OFPD, cautioned

Watts about the serious risks involved in proceeding without the benefit of knowledgeable criminal

counsel, and appointed an experienced member of the bar as standby counsel on her behalf.  Dkt.

No. 31.  Thereafter, Watts filed a series of *pro se* motions seeking release from custody along with

other forms of relief.  Dkt. Nos. 52, 55, 57, 91.  Those motions have all been denied.  Dkt. Nos.

88, 90, 104.

## III.    DISCUSSION

Watts has moved to: (1) sever her case from her co-defendant; and (2) compel certain dis-

covery.  Dkt. No. 100, 101.  The Government has opposed.  Dkt. No. 105.

### 1. Severance

First, Watts has moved for an order dismissing her from this action or, in the alternative,

severing the charges against her from those asserted against her co-defendant.  Dkt. No. 100.  Ac-

cording to Watts:

> In the event of out-of-court statements concerning his own culpabil-
> ity on the charged offenses, which may implicate me as well, [Pino-
> Copete] may choose not to testify at a joint trial.  If such a statement
> is admitted against me, I will be prejudiced and denied my Consti-
> tutional right to confrontation.  No other remedy other than sever-
> ance and separate trials will suffice because potential incriminatory
> statements may not be redacted to eliminate references to me.

Dkt. No. 100 at 1–2.

Rules 8 and 14 of the Federal Rules of Criminal Procedure govern joinder and severance in criminal cases.  Generally speaking, joinder of two or more defendants is permitted "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  FED. R. CRIM. P. 8(b).  However, if joinder "appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  FED. R. CRIM. P. 14(a).

Measured against this general legal standard, Watts and Pino-Copete are properly joined as co-defendants.  The Second Circuit has interpreted Rule 8's "same series of acts or transactions" language to mean that "joinder is proper where two or more persons' criminal acts are 'unified by some substantial identity of facts or participants,' or 'arise out of a common plan or scheme.'" *United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008) (quoting *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990)).  Accordingly, "[t]he established rule is that a non-frivolous conspiracy charge is sufficient to support joinder of defendants under [Rule 8(b)]." *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988) (collecting cases).

A review of the superseding indictment confirms that the Government has charged Watts with a non-frivolous conspiracy, *i.e.*, conspiring with her husband to commit wire fraud by, *inter alia*, seeking reimbursement for services that Pearl Transit did not provide.  "The elements of wire fraud are: (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the wires to further the scheme." *United States v. Jabar*, 19 F.4th 66, 76 (2d Cir. 2021) (quoting *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015)).  "Conspiracy to commit wire fraud requires merely the agreement between defendants to engage in the foregoing and an overt act by one of the conspirators in furtherance of the conspiracy." *Id*.

The factual allegations in the superseding indictment track these elements. Among other things, the superseding indictment alleges that Watts and Pino-Copete engaged in a common plan or scheme to fraudulently obtain payment from New York State by submitting reimbursement requests for services that were not in fact performed by Pearl Transit. *See* Dkt. No. 62. The superseding indictment further alleges that both co-defendants engaged in a series of acts in furtherance of that common plan or scheme, including working together to fabricate supporting documentation to submit to State auditors. *See id*.

These allegations are more than sufficient to satisfy the approach that our circuit has taken to the joinder of co-defendants under Rule 8(b). *See, e.g.*, *Rittweger*, 524 F.3d at 178 ("Under the plain language of Rule 8(b), the decision to join parties turns on what is 'alleged' in the 'indictment.'"); *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) ("We use a common sense approach when considering the propriety of joinder under Rule 8(b).").

"Even with proper joinder under Rule 8, Rule 14 provides that a district court may nonetheless grant a severance of defendants' joint trial if it appears that a defendant or the government is prejudiced by a joinder." *Feyrer*, 333 F.3d at 114 (cleaned up). However, there is a strong preference in the federal system "for the joint trial of defendants indicted together." *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993). Accordingly, the Supreme Court has explained that severance is warranted only when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Watts has not made anywhere near the showing that would be required to grant her the relief she seeks at this time. To be sure, "[t]he risk of prejudice associated with joinder varies with the facts of each case." *Feyrer*, 333 F.3d at 114. And of course, "the trial judge has a continuing

duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 516 (1960).  But Watts's only meaningful argument on this point is based on a vague reference to unidentified "out-of-court statements" that may prejudice her.  Dkt. No. 100.

That is hardly enough to justify severance.  First off, a "defendant must show not simply some prejudice but *substantial* prejudice."  *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (emphasis in original) (cleaned up).  As the Government points out, given the nature of the alleged conspiracy, the proof at trial would "involve nearly complete, if not total, overlap with the charge against Pino-Copete," her alleged co-conspirator.  Dkt. No. 105 at 10.

Under those circumstances, there is a better-than-even chance that any relevant out-of-court statements would be equally admissible at trial against Watts and her co-conspirator.  *See, e.g.*, *United States v. Gupta*, 747 F.3d 111, 125 (2d Cir. 2014) (explaining operation of Rule 801(d)(2)(E)'s hearsay exception for statements made by co-conspirator in furtherance of a conspiracy).

Although that evidence might be "prejudicial" to Watts's defense in the sense that it may tend to prove the Government's conspiracy charge or other charges against her, it would not establish the kind of substantial prejudice with which Rule 14's stringent standard is concerned.  *See United States v. DiNome*, 954 F.2d 839, 843–44 (2d Cir. 1992) (explaining that so-called "spillover prejudice" occurs when "evidence admissible against only one defendant is prejudicial to all defendants").

However, even assuming for the purpose of this motion practice that Watts's conclusory assertions might establish *some* risk of prejudice, there is no indication at this time that an appropriate limiting instruction at trial would be an insufficient remedy.  "As a general matter, even where multiple defendants are charged with the same crimes, the use of an out-of-court statement

admission does not violate the Confrontation Clause when accompanied by an instruction limiting its admissibility as against the declarant defendant." *United States v. Defreitas*, 701 F. Supp. 2d 309, 315 (E.D.N.Y. 2010) (collecting cases). Indeed, the Supreme Court has recently confirmed that measures short of severance will typically satisfy constitutional requirements. *See, e.g.*, *Samia v. United States*, 599 U.S. 635, 654–55 (2023). Accordingly, Watts's motion to sever must be denied.

### 2. Discovery

Second, Watts has moved to compel discovery of multiple categories of the Government's evidence against her. Dkt. No. 101. In opposition, the Government represents that it has disclosed the requested materials to Watts in an electronic format in December of 2025 and again in January of 2026. Dkt. No. 105 at 13.

Federal Rule of Criminal Procedure 16 governs pre-trial criminal discovery. Rule 16 obligates the Government to disclose, on a continuing basis, a broad range of statements, records, and other documents and objects. *See* FED. R. CRIM. P. 16(a)(1), (c). Likewise, although it may not be a pre-trial discovery rule, *Brady* and its progeny require the disclosure of "evidence favorable to an accused," *Brady v. Maryland*, 373 U.S. 83, 87 (1963), which includes evidence that may be useful to impeach the credibility of a government witness, *Giglio v. United States*, 405 U.S. 150, 154 (1972). Notably, however, Rule 16 also carves out a list of information that is *not* subject to disclosure. FED. R. CRIM. P. 16(a)(2). And a statutory provision called the Jencks Act expressly provides that non-party witness statements are *not* discoverable until after the witness has testified on direct examination. *See* 18 U.S.C. § 3500.

Upon review, Watts's motion to compel discovery is denied in all respects. First off, Watts's motion to compel amounts to little more than an unelaborated listing of the categories of

information that are subject to disclosure under Rule 16. *See* Dkt. No. 101. The bar is set fairly low, but a criminal defendant seeking to obtain discovery under Rule 16 typically has to "make a *prima facie* showing of materiality," *United States v. Clarke*, 979 F.3d 82, 97 (2d Cir. 2020), which involves some indication that the evidence being sought "could be used to counter the government's case or to bolster a defense." *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993). A *pro forma* list of categories of information covered by Rule 16 hardly meets this standard.

Second, the Government represents that it has disclosed all of the requested materials—the ones that are subject to disclosure at this time, anyway—to Watts in an electronic format on two occasions. Dkt. No. 105 at 13. The Government has offered supporting documentation to that effect. Exs. 1 & 2 to Dkt. No. 105 (identifying list of disclosures). The Government has also offered documentation establishing that Watts can access these electronic documents at the facility where she is being detained. Ex. 3 to Dkt. No. 105 (detention facility representative confirming that Watt has access to USB drives and a suitable computer for reviewing disclosures). Further, according to the Government, Watts "reviewed the discovery, including some of the content on the USBs provided by the Government, with her stand-by counsel, the investigators, and the undersigned AUSA, at the U.S. Attorney's Office on February 12, 2026." Dkt. No. 105 at 13.

The Court has reviewed the Government's representations (and supporting documentation). The Court is also well-familiar with this pending criminal matter from prior motion practice. Based on the available filings and the Court's knowledge base, and even accounting for defendant's unrepresented status, the Court concludes that Watts's *pro forma* motion to compel is utterly without merit. Accordingly, Watts's motion to compel discovery must be denied.

## IV.    CONCLUSION

Watts's motions are without merit and must be denied.

- 9 -

Therefore, it is

ORDERED that

1.  Defendant Jael Watts's motion to sever (Dkt. No. 100) is DENIED; and

2.  Defendant Jael Watts's motion for discovery (Dkt. No. 101) is DENIED.

The Clerk of the Court is directed to terminate the pending motions.

**IT IS SO ORDERED.**

Dated:  April 2, 2026
       Utica, New York.

Anthony J. Brindisi
U.S. District Judge