**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

-v- 1:25-CR-411 (AJB)

JAEL WATTS and LUIS PINO-COPETE,

Defendants.

---

**Hon. Anthony Brindisi, U.S. District Judge:**

**ORDER on PRE-TRIAL MOTIONS**

## I. INTRODUCTION

The United States of America (the "Government") has obtained a ten-count second superseding indictment that charges defendant Jael Watts ("Watts") with making a false statement (Count One), aggravated identity theft (Count Two), wire fraud (Counts Three through Seven), and of conspiring with her co-defendant and husband Luis Pino-Copete ("Pino-Copete") to commit wire fraud (Count Eight). Dkt. No. 154. The second superseding indictment also charges Watts and Pino-Copete (collectively "defendants") with submitting a false document (Count Nine) and aggravated identity theft (Count Ten). *Id*.

The case is set for a jury trial on Monday, September 14, 2026, at 9:00 a.m. in Utica, New York. Dkt. No. 151. The Government has moved *in limine* for certain pre-trial relief. Dkt. Nos. 167, 168, 173, 174. Defendants have opposed. Dkt. No. 186. The Court heard argument from the parties at the final pre-trial conference on September 9, 2026 in Utica, New York. *See* Text Minute Entry for 9/9/26. Decision was reserved.

## II. BACKGROUND[1]

From July 2019 through October 2025, Watts, eventually assisted by Pino-Copete, allegedly obtained millions of dollars in federal grant money through Pearl Transit Corporation, a company Watts controlled. Watts served as Pearl Transit's Operations Manager and Pino-Copete served as the company's Vice President of Operations. Defendants claimed that Pearl Transit employed dozens of drivers across numerous states who provided transportation services to elderly, disabled, and disadvantaged individuals and provided community outreach to the homeless.

The Government contends that these representations were false. According to the Government, Pearl Transit did not employ these drivers or serve these clients. Instead, defendants stole real peoples' names and personal identifying information and used those stolen identities to create false employment and client records. They used these false records to obtain federal grant money from local and state administrators in New York, Georgia, and California.

Defendants were arrested and have been ordered detained. Dkt. No. 26 (Watts); *see* Text Minute Entry at 12/29/25 (Pino-Copete). Although defendants initially received Court-appointed counsel, Dkt. Nos. 12 (Watts); Dkt. No. 76 (Pino-Copete), they have elected to exercise their constitutional right to proceed *pro se*. The Court has appointed standby counsel on their behalf. Dkt. No. 31 (Watts); Dkt. No. 111 (Pino-Copete). Standby counsel has been instructed to assist each defendant in obtaining and reviewing discovery materials and to facilitate the process of filing motions and other documents with the Court. *See, e.g.*, Dkt. Nos. 184, 191.

[1] This brief recitation of the alleged facts is based on a review of the docket, including the affidavit in support of the criminal complaint, Dkt. No. 12, the allegations in the second superseding indictment, Dkt. No. 154, and the Government's trial brief, Dkt. No. 165.

## III. LEGAL STANDARD

The purpose of a motion *in limine* is to streamline and simplify the issues at trial by ruling on the admissibility of forecasted evidence or the permissibility of anticipated lines of argument. *See, e.g.*, *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (reducing interruptions); *United States v. Wager*, 651 F. Supp. 3d 594, 598 n.1 (N.D.N.Y. 2023) (applying to anticipated lines of argument).

"Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Miller-Harris v. County of Onondaga*, 808 F. Supp. 3d 386, 398 (N.D.N.Y. 2025) (cleaned up). "The trial judge may reserve judgment on a motion *in limine* until trial to ensure the motion is considered in the proper factual context." *Id*. Importantly, a trial court's "ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41.

## IV. DISCUSSION

The Government has moved *in limine* to: (1) authenticate and admit business records without the need for testimony from a witness at trial; (2) prohibit evidence or argument about plea negotiations; (3) admit evidence of defendants' consciousness of guilt; and (4) admit evidence of spousal communications made in furtherance of criminal activity. Dkt. Nos. 167, 168, 173, 174.

As a general matter, "relevant" evidence is admissible at trial unless it is excluded by the Constitution, some federal statute, or the rules of evidence. Fed. R. Evid. 402. Evidence is "relevant" if: (a) "it has any tendency to make a fact more or less probable than it would be without the evidence"; and (b) "the fact is of consequence in determining the action." Fed. R. Evid. 401.

This relevance threshold is low. *See, e.g.*, *United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006) (explaining Rule 401 is satisfied "so long as a chain of inferences leads the trier of

fact to conclude that the proffered submissions affects the mix of material information"). However, "relevant" evidence may still be excluded if "its probative value is substantially outweighed by a danger" of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Of course, "virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'" *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977). Evidence qualifies as "unfairly prejudicial" when "it tends to have some adverse effect [on a party] beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) (cleaned up).

"Fed. R. Evid. 403 grants the trial judge broad discretion to determine whether to allow the introduction of relevant, but prejudicial, matters into evidence." *Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 327 (2d Cir. 1986). "In making a Rule 403 determination, a court should consider the possible effectiveness of a jury instruction and the availability of other means of proof." *United States v. Garnes*, 102 F.4th 628, 635 (2d Cir. 2024) (cleaned up).

**1. Business Records** (Dkt. No. 167)

The Government seeks an order permitting the introduction of certain business records without the need for the testimony of a live witness at trial. Dkt. No. 167 at 1. In particular, the Government seeks to introduce: (a) business records from bank accounts controlled by defendants at Wells Fargo, N.A., Bank of America, N.A., Citizens Bank, N.A.; and (b) records from iCloud accounts in Watts's name that were administered by Apple, Inc. *Id*. at 1–3. Defendants oppose in part. Dkt. No. 186.

Business records are technically considered "hearsay." Hearsay is an out-of-court "statement," made by someone other than the "declarant," being offered in evidence to prove the truth

of the matter asserted. *See* Fed. R. Evid. 801. "The principal vice of hearsay evidence is that it offers the opponent no opportunity to cross examine the declarant on the statement that establishes the declared fact." *United States v. Reyes*, 18 F.3d 65, 69 (2d Cir. 1994); *see also United States v. Hernandez*, 333 F.3d 1168, 1179 (10th Cir. 2003) ("The purpose of the hearsay rule is to preclude a class of evidence considered to be generally less reliable than in-person testimony of events observed by the testifying witness."). Accordingly, hearsay evidence is generally considered inadmissible at trial. Fed. R. Evid. 802.

However, there are a long list of exceptions to the so-called "rule against hearsay." Fed. R. Evid. 803. As relevant here, the Federal Rules of Evidence contain a "business records exception." Fed. R. Evid. 803(6). The business records exception permits the admission into evidence of a "record of an act, event, condition, opinion, or diagnosis" if:

> (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge;
>
> (B) the record was kept in the course of regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rules 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

"The purpose of the rule is to ensure that documents were not created for 'personal purpose[s] . . . or in anticipation of any litigation' so that the creator of the document 'had no motive to falsify the record in question.'" *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010)

(quoting *United States v. Freidin*, 849 F.2d 716, 719 (2d Cir. 1988)); *see also United States v. Ary*, 518 F.3d 775, 786 (10th Cir. 2008) ("The rationale behind this exception is that business records have a high degree of reliability because businesses have incentives to keep accurate records.").

The Second Circuit has taken an expansive approach to the business records exception. *See, e.g.*, *United States v. Strother*, 49 F.3d 869, 874 (2d Cir. 1995). As one court explained, "the business records exception has been construed generously in favor of admissibility, due to the generally trustworthiness of the regularly kept records and the need for this type of evidence in many cases." *Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs., LLC*, 610 B.R. 197, 222 (Bankr. S.D.N.Y. 2019).

However, the general rule against hearsay is not the only hurdle to admission of this kind of evidence. Evidence must also be properly authenticated or identified to be admissible. *See, e.g.*, *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

"The bar for authentication of evidence is not particularly high." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007). "Rule 901's requirements are satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004) (cleaned up). "The ultimate determination as to whether the evidence is, in fact, what its proponent claims is thereafter a matter for the jury." *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014).

Under the Federal Rules of Evidence, certain items are "self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902. As relevant here, Rule 803(6) states that authentication of a business record can be accomplished "by the testimony

of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification." Fed. R. Evid. 803(6)(D).

Rule 902(11) provides in relevant part that "certified domestic records of a regularly conducted activity" are considered self-authenticating if "[t]he original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court." Fed. R. Evid. 902(11). Likewise, "certified records generated by an electronic process or system" are considered self-authenticating provided their accuracy is "shown by a certification of a [custodian or other] qualified person that complies with the certification requirements of Rule 902(11)." Fed. R. Evid. 902(13). Under either provision, the custodian or other qualified person "need not have personal knowledge of the actual creation of the document to lay a proper foundation." *United States v. Conde*, 134 F.4th 82, 88 (2d Cir. 2025).

Measured against this general legal standard, the bank account and electronic records identified by the Government fall comfortably within the business records exception. As the Second Circuit has explained, Rule 803(6) and 902(11) and (13) work together to "create a framework for the authentication and admission of business records without the expense and inconvenience of producing time-consuming foundation witnesses." *Conde*, 134 F.4th at 88 (cleaned up).

The Government has offered certifications from records custodians that satisfy the requirements of Rule 902. *See, e.g.*, *United States v. Arrington*, 634 F. Supp. 3d 57, 66 (W.D.N.Y. 2022) (explaining that an unsworn declaration made under penalty of perjury pursuant to 28 U.S.C. § 1746 meets Rule 902(11)'s certification requirement). These records-custodian certifications also track the remaining requirements imposed by Rule 803(6)(A)–(C). *See* Dkt. Nos. 167-1 (Wells Fargo), 167-2 (Bank of America), 167-3 (Citizens Bank), 167-4 (Apple).

In opposition, defendants argue that the iCloud records are inadmissible because these statements "were not made by agents of Apple." Dkt. No. 186 at 6. Defendants maintain that the "identified Apple accounts" and other, "supposedly related accounts maintained on secondary platforms," "were established by unknown third parties." *Id*. at 7. According to defendants, "statements contained within these accounts are testimonial and not properly attributable to either defendant." *Id*. At oral argument, Watts supplemented this argument by principally objecting to the application of this evidentiary exception to certain records from Microsoft, "Fiverr," and Apple that have since been disclosed on the Government's revised exhibit list. *See* Dkt. No. 202. Pino-Copete raised a similar objection.

These arguments do not warrant relief. Defendants have not made the contrary showing required by Rule 803(6), which precludes use of the business records exception if the opponent can "show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). The Court's independent review of the available submissions do not suggest this showing could be met at this time, either.

As the Government points out, the use of these certifications merely establish that the exhibits are an entity's authentic business records. *See Conde*, 134 F.4th at 88 (explaining that this evidentiary exception is intended to avoid the need for time-consuming foundation witnesses). Defendants remain free to argue at trial, among other things, that one or more of these business records are irrelevant to the issues in dispute or that perhaps these documents might reflect conduct for which one or both of defendants might not be responsible. Accordingly, the Government's motion *in limine* will be granted. *See, e.g.*, *United States v. Otufale*, 740 F. Supp. 3d 233, 249 (E.D.N.Y. 2024) (permitting Government to authenticate business and electronic records "using records custodian certifications without calling the records custodians to testify").

**2. Plea Negotiations** (Dkt. No. 168)

The Government has moved for an order prohibiting the introduction of evidence or argument about pre-trial plea offers or negotiations. Dkt. No. 168 at 1. According to the Government, these "negotiations are not relevant to the jury's determination of guilt and would serve only to distract the jury, confuse the issues, and waste time." *Id*. Defendants do not appear to oppose this request. *See* Dkt. No. 186. The Court confirmed as much during the final pre-trial conference.

"The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Fed. R. Crim. P. 11(f). Under Rule 410(a), evidence of a guilty plea, statements made during a change-of-plea hearing, or plea discussions with a prosecutor are generally inadmissible in a civil or criminal case "against the defendant who made the plea or participate in the plea discussions." Fed. R. Evid. 410(a)(1)–(4).[2] "The underlying purpose of Rule 410 is to promote plea negotiations by permitting defendants to talk to prosecutors without sacrificing their ability to defend themselves if no disposition agreement is reached." *United States v. Barrow*, 400 F.3d 109, 116 (2d Cir. 2005).

The Government represents that it does not intend to offer this kind of evidence *against* defendants. *See* Dkt. No. 168. Thus, as the Government points out, Rule 410 is inapplicable to this motion *in limine*. *Id*. at 2. As the Government explains, Rule 410(a)'s language operates to bar admissibility of plea-related evidence or argument when it is offered "against the defendant." But here, plea-related evidence or argument would be offered "by" a defendant. And Rule 410 does not control whether a *defendant* may be permitted to introduce this evidence or argument.

The Government points out that some courts have examined whether Rule 408 might govern in this instance. Dkt. No. 168 at 2. Historically, Rule 408 has prohibited the admission of

---

[2] There are exceptions to this general rule. Fed. R. Evid. 410(b). These protections can also be waived. *See, e.g.*, *United States v. Lyle*, 919 F.3d 716, 732 (2d Cir. 2019). These nuances are inapplicable to the issue presented here.

evidence of settlement negotiations or agreements. As the Government explains, "the question of whether Rule 408 applies to both criminal and civil proceedings" caused a circuit split at one point in time. *Id*. (citing *United States v. Bailey*, 327 F.3d 1131, 1144 (10th Cir. 2003)).

Although the Government is correct that the Second Circuit once held that Rule 408's restrictions do not apply to criminal prosecutions, *Manko v. United States*, 87 F.3d 50, 54 (2d Cir. 1996), these authorities were decided before 2006, when the Rule was "amended to settle some questions in the courts about the scope of the rule." Rule 408 Advisory Committee's Note (2006 Amendment); *see also PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109, 112–13 n.1 (2d Cir. 2008) (noting amendment).

More recently, the Second Circuit has indicated—albeit in non-binding fashion—that the amended version Rule 408 does have *some* application in the criminal context. *United States v. Wahl*, 563 F. App'x 45, 51 (2d Cir. 2014) (summary order). Even so, the amended version of Rule 408 does not squarely govern this issue, either. Under Rule 408, evidence of settlement negotiations or a settlement agreement is generally inadmissible "on behalf of any party . . . to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). This language says nothing about plea-related evidence.

In short, neither Rule 410 nor Rule 408 govern the admissibility of this evidence. Where, as here, no specific rule of evidence applies, the general principles governing the admissibility of evidence guide the analysis. *See* Fed. R. Evid. 402. As noted *supra*, "relevant" evidence is admissible subject to the probative-prejudice balancing test of Rule 403. Under that test, relevant evidence may be excluded if "its probative value is substantially outweighed by a danger" of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Measured against this general legal standard, and even assuming this evidence has some minimal degree of "relevance," the Court easily concludes that its limited probative value is substantially outweighed by the danger of confusing the issues and misleading the jury about the facts to be decided in this prosecution, which relate to the charged offenses as opposed to any failed plea negotiations. Mueller & Kirkpatrick, 2 Federal Evidence § 4:71 (4th ed.) ("[I]t is almost guaranteed that offers of statements by prosecutors, or offers to accept pleas, will lead to side issues and confusion, and of course Rule 403 provides a ground for exclusion on this basis.").

Further, as the Government points out, if either defendant sought to offer this kind of evidence or argument it would almost certainly necessitate the introduction of some limited amount of additional irrelevant-or-minimally-irrelevant proof vis-à-vis the Government's own position in those pre-trial plea negotiations. *Cf.* Fed. R. Evid. 410(b) (permitting introduction of otherwise-barred evidence of plea-related statements "if in fairness the statements ought to be considered together"). Permitting this detour in the proof at trial would result in the kind of "trial within a trial" that Rule 403 is designed to avoid. *See, e.g.*, *United States v. Aboumoussallem*, 726 F.2d 906, 911–12 (2d Cir. 1984). Accordingly, the Government's motion *in limine* will be granted.

**3. Consciousness of Guilt** (Dkt. No. 173)

The Government seeks an order permitting the introduction of evidence of "defendants' efforts to obstruct law enforcement to prove their consciousness of guilt." Dkt. No. 173 at 5. In particular, the Government seeks to introduce: (a) recorded conversations in which defendants discussed the erasure of Watts's cell phone and computer; and (b) proof of Pino-Copete's transfer of fraud proceeds. *Id*. at 6. As the Government explains, after her arrest Watts called Pino-Copete "from a jail on a recorded line to begin planning to obstruct the case" against them. *Id*. at 1. The Government states that over the next several days, defendants "plotted to erase devices and move

money in an effort to impede investigators." *Id*. at 1. According to the Government, this evidence is admissible at trial subject to an appropriate limiting instruction. *Id*. at 6. Defendants oppose. Dkt. No. 186.

Generally speaking, evidence of a "crime, wrong, or act" falls into one of two distinct categories. The first category is "intrinsic evidence," which means that the act itself is fairly considered part of the charged offense. *See, e.g.*, *United States v. Fishman*, 157 F.4th 143, 162 (2d Cir. 2025). Intrinsic evidence is not limited "strictly to evidence of the specific criminal conduct by which the defendant commits the charged crime." *United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022). Evidence is also considered "intrinsic" if it "arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Robinson*, 702 F.3d 22, 37 (2d Cir. 2012) (cleaned up). Intrinsic evidence is admissible as direct proof of the charged offense. *See United States v. Lyle*, 919 F.3d 716, 736 (2d Cir. 2019) (finding evidence intrinsic to a charged conspiracy "admissible as direct proof").

The second category is "extrinsic evidence," which means that the evidence being offered is not fairly considered part of the charged offense but instead involves proof of some "*other* crime, wrong, or act." Fed. R. Evid. 404(b) (emphasis added). Evidence of other crimes, wrongs, or acts cannot be offered "to prove the defendant's propensity to commit the crime charged." *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017) (cleaned up). However, "other act" evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

As relevant here, consciousness-of-guilt evidence can be considered "intrinsic" in limited circumstances. *See, e.g.*, *United States v. Morgan*, 786 F.3d 227, 232 (2d Cir. 2015) (collecting

cases). However, courts often treat consciousness-of-guilt evidence as "extrinsic" or "other act" evidence. *See United States v. Macklin*, 927 F.2d 1272, 1279 (2d Cir. 1991) (distinguishing consciousness-of-guilt evidence from direct proof of guilt); *United States v. Bein*, 728 F.2d 107, 114 (2d Cir. 1984); *see also United States v. Clark*, 24 F.4th 565, 580 (6th Circ. 2022) ("Typically, evidence of a defendant's consciousness of guilt is admitted under Rule 404(b) when he flees the scene, attempts to bribe or threatens adverse witnesses, tampers with evidence, or expresses his suicidal ideations.").[3]

Regardless of the exact characterization, the Second Circuit has repeatedly found that evidence of a defendant's obstructive conduct can be admissible to prove "consciousness of guilt." *United States v. Triumph*, 544 F.3d 149, 160 (2d Cir. 2008) (collecting cases); *see also United States v. Steele*, 390 F. App'x 6, 12 n.2 (2d Cir. 2010) (summary order) (cleaned up) ("It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment assumption of a fake name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.").

The Government's motion *in limine* does not explicitly characterize the consciousness-of-guilt evidence that it seeks to introduce at trial as "intrinsic" evidence of a charged offense or "extrinsic" evidence of other bad acts. At oral argument, the Government represented that the particular evidence at issue might be characterized both ways: there is a strong argument to be made that proof of discussions between defendants about remotely erasing Watts's smart phone, which contained conversations tending to prove the fraud scheme, and instructions for Pino-Copete to move some of the fraud proceeds out of certain bank accounts, could fairly be considered

[3] There is a separate test for determining when to permit a jury to consider evidence of flight as circumstantial evidence of guilt. *See, e.g.*, *United States v. Torres*, 435 F. Supp. 3d 526, 537 (S.D.N.Y. 2020) (quoting *United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005)).

conduct in furtherance of the conspiracy jointly charged in Count Eight, which would therefore qualify as "intrinsic" evidence of one or more of the charged offenses.

But when, as here, "it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." *United States v. Johnson*, 469 F. Supp. 3d 193, 204 (S.D.N.Y. 2019) (citation omitted). The Second Circuit "takes an 'inclusionary' approach to Rule 404(b), under which all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character is admissible, subject to Rule 402 and Rule 403's respective relevance and prejudice considerations." *United States v. Kelly*, 128 F.4th 387, 425 (2d Cir. 2025) (cleaned up). However, the "inclusionary rule is not a carte blanche to admit prejudicial extrinsic act evidence that is offered to prove propensity or otherwise to allow propensity evidence in sheep's clothing." *Zhong*, 26 F.4th at 551 (cleaned up).

In determining whether extrinsic "other act" evidence may be properly admitted, a trial court should consider whether the evidence is: (1) being offered for a proper purpose; (2) relevant to a material issue in dispute; and (3) satisfies the balancing test in Rule 403. *See, e.g.*, *United States v. Scott*, 677 F.3d 72, 83 (2d Cir. 2012). In addition, the Court must give the jury a limiting instruction if one is requested. *See id*.

Even measured against Rule 404(b)'s more rigorous standard for admission, the Government's motion *in limine* to introduce the proffered evidence will be granted. The evidence is being offered for a proper purpose and is relevant to one or more of the material issues in dispute in this prosecution: to prove knowledge and intent vis-à-vis the charged fraud offenses. *See, e.g.*, *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004) ("We have upheld the admission of various kinds of evidence on the ground that it demonstrated consciousness of guilt.").

Indeed, evidence of "obstructive conduct," such as instructing others to remotely wipe electronic devices, attempting to delete incriminating videos, or efforts taken to avoid the production of bank records, have all been held admissible to show consciousness of guilt. *See United States v. Carpenter*, 372 F. Supp. 3d 74, 80 (E.D.N.Y. 2019); *United States v. Sprecher*, 783 F. Supp. 133, 155 –56 (S.D.N.Y. 1992). As the Government emphasizes, the consciousness-of-guilt evidence being offered is highly probative of knowledge and intent with regard to the charged fraud offenses, and this probative value is not substantially outweighed by the danger of unfair prejudice. To the contrary, this proof is no more sensational or disturbing than the multi-million-dollar fraud crimes at issue in the prosecution.

In opposition, defendants contend that this evidence is "overly prejudicial" within the meaning of Rule 403. Dkt. No. 186 at 5–6. Defendants maintain that the "company owned devices" were "accessed and utilized by multiple, unknown third parties" and therefore "not probative of either defendants' intent to destroy evidence." *Id*. at 6. According to defendants, "admitting evidence of data removal and/or transfer of funds between accounts invites the staging of mini-trials to consider these narrow issues, resulting in confusion and the waste of juror time for the resolution of collateral questions." *Id*. At oral argument, Watts principally reiterated her argument that this evidence would be hearsay not subject to any exception. Pino-Copete largely agreed.

Defendants' arguments are rejected. As explained *supra*, and as the Government argued at the pre-trial conference, the proffered evidence is highly probative of certain material issues in dispute, including knowledge and intent with regard to the fraud scheme. There is no indication that this evidence's substantial probative value will be overcome by Rule 403's limitation. Although there may be other barriers to admissibility at trial, defendants' arguments do not justify the exclusion of this evidence on Rule 403 grounds.

Watts's contention that this evidence *must* be inadmissible hearsay fares no better. As a general matter, statements that were made or adopted by an opposing party and later offered against them at trial are not considered hearsay. *See* Fed. R. Evid. 801(d)(2)(A)–(D). Further, as the Government argued during the hearing, one or more of these statements will likely be admissible under the co-conspirator exception to that general rule. Fed. R. Evid. 801(d)(2)(E).

Under Rule 801(d)(2)(E), "[e]xtra-judicial statements by co-conspirators may be admitted if the government establishes by a preponderance of the evidence that there was a conspiracy, that both the declarant and the party against whom the statements are offered were members of the conspiracy, and that the statements were made during and in furtherance of the conspiracy." *United States v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996) (citing *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987).

Watts is correct that this exception requires "some independent corroborating evidence of the defendant's participation in the conspiracy." *Tellier*, 83 F.3d at 580. But the Second Circuit has observed that this corroboration requirement is far easier to satisfy "[w]here, as here, the hear-say evidence itself so convincingly implicates the defendant." *United States v. Padilla*, 203 F.3d 156, 161 (2d Cir. 2000). Accordingly, this motion will be granted subject to an appropriate limit-ing instruction at trial based on the evidence that is admitted.

**4. Spousal Communications** (Dkt. No. 174)

The Government acknowledges that confidential discussions between spouses are gener-ally privileged during marriage. Dkt. No. 174 at 1. However, the Government argues that there is an exception to this privilege for communications made in furtherance of a crime or fraud. *Id*. According to the Government, Watts and Pino-Copete conspired to commit fraud and "illegally derail this case," using messaging applications and recorded jail lines. *Id*. The Government seeks

a "pretrial ruling that such communications can be entered into evidence because they are not protected by the confidential marital communications privilege." *Id*. Defendants oppose. Dkt. No. 186.

Generally speaking, "the party invoking a privilege bears the burden of establishing its applicability to the case at hand." *In re Grand Jury Subpoenas*, 318 F.3d 379, 384 (2d Cir. 2003). However, "[c]onversations between spouses are presumed confidential," so the Government bears the burden of defeating the presumption. *United States v. Taylor*, 92 F.3d 1313, 1332 (2d Cir. 1996). Under the Federal Rules of Evidence, federal common law "as interpreted by United States courts in light of reason and experience" governs a claim of privilege unless the Constitution, some federal statute, or rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 501.

Federal common law recognizes two types of marital or spousal privilege. *See In re Witness Before Grand Jury*, 791 F.2d 234, 236 (2d Cir. 1986). The first type is the "adverse spousal testimony" privilege, which permits an individual to refuse to testify against his or her spouse. *See Trammel v. United States*, 445 U.S. 40, 53 (1980). The second type is the confidential or "martial communications privilege," which protects private and confidential communications between spouses from disclosure. *See Blau v. United States*, 340 U.S. 332, 333 (1951).

The Government's motion pertains to the second type. The confidential or marital communications privilege applies when "(1) the parties were in a valid marriage at the time of the communication; (2) the 'utterances or expressions' were 'intended to convey information between spouses' (communication prong); and (3) the communications were intended to be confidential (confidentiality prong)." *United States v. Pugh*, 945 F.3d 9, 18 (2d Cir. 2019).

Either spouse can invoke this privilege. *See United States v. Premises Known as 281 Syosset Woodbury Road*, 71 F.3d 1067, 1070 (2d Cir. 1995). However, the Second Circuit has

recognized a "joint participant" or "crime-fraud" exception to this privilege. *See United States v. Estes*, 793 F.2d 465, 468 (2d Cir. 1986). In other words, courts refuse to apply the privilege where "the testimony is not given under compulsion and the communications in question were made in furtherance of unlawful joint activity." *Id*. at 467 (collecting cases).

The Government intends to introduce recorded calls and messages that Watts made to Pino-Copete while she was being held at Albany County Correctional Facility. There may be other barriers to the admissibility of these materials at trial.[4] But the question on this motion is only about privilege. Because the facility's communications systems explicitly warn users that they are being monitored, no privilege attaches to them. *See United States v. Mejia*, 655 F.3d 126, 133–34 (2d Cir. 2011) (finding no attorney-client privilege for recorded jail calls and noting that consensus amongst circuit courts that "where an inmate is aware that his or her calls are being recorded, those calls are not protected by a privilege"); *United States v. Pugh*, 162 F. Supp. 3d 97, 111 (E.D.N.Y. 2016) ("[W]here one spouse is imprisoned, communication between the married couple on prison telephones is not protected."). Accordingly, these communications cannot be protected by spousal privilege.

The Government also intends to introduce "certain pre-arrest private written communications between the defendants as well as a portion of a July 22, 2026 jail call . . . where the recording system incorrectly stated that the recorded had ended after the defendants began to discuss destroying evidence." Dkt. No. 174 at 5. Again, while there may be other barriers to the admissibility of this evidence at trial, spousal communications made in furtherance of unlawful joint activity

---

[4] For instance, defendants argue that these statements are hearsay not subject to any exception, and unduly prejudicial within the meaning of Rule 403. *See* Dkt. No. 186 at 2–5. At oral argument, Watts reiterated her claim that certain of these statements were hearsay not subject to any exception and claimed in the alternative that this proof fails Rule 403's prejudicial-probative balancing test. The Court reserves decision on both issues until this evidence is actually offered at trial. The Court's opinion on this issue is limited to the question of privilege.

(such as destroying evidence) are not protected by spousal privilege. *See United States v. Marashi*, 913 F.2d 724, 730 (9th Cir. 1990) (collecting cases holding that "[e]very circuit addressing the issue has held that the marital communications privilege does not apply to communications having to do with present or future crimes in which both spouses are participants"). Accordingly, these communications cannot be protected by spousal privilege.

## IV. CONCLUSION

The Government's motions *in limine* will be granted. To the extent that defendants' opposition filing raises objections to the Government's proposed jury charge, those challenges are premature but will be considered in advance of the charge conference. *See* Dkt. No. 186 at 1. To the extent that defendants' opposition filing seeks relief related to "reciprocal discovery violations," *see id*., the Court has already issued a separate order on the docket. *See* Dkt. No. 192.

Therefore, it is

ORDERED that

1. The Government's motions *in limine* (Dkt. Nos. 167, 168, 173, 174) are GRANTED.

IT IS SO ORDERED.

Dated: September 10, 2026
Utica, New York.

Anthony J. Brindisi
U.S. District Judge