**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

-v- 1:25-CR-411 (AJB)

JAEL WATTS and LUIS PINO-COPETE,

Defendants.

**Hon. Anthony Brindisi, U.S. District Judge:**

**ORDER DENYING RELIEF**

On September 15, 2026, in the midst of day two of jury selection in this criminal case, defendants Jael Watts and Luis Pino-Copete challenged various aspects of the process.

**A. Jury Panel Composition**

First, defendants challenged the composition of the venire. Pino-Copete, for his part, objected generally to the composition of the jury pool that was called to service. Watts, for her part, sought dismissal of the third superseding indictment based on an alleged violation of her constitutional and statutory rights based on substantially the same alleged deficiency or deficiencies.

The Sixth Amendment guarantees criminal defendants "an impartial jury of the State and district" where the crime was committed. U.S. Const. amend. VI. That guarantee includes the requirement that "petit juries must be drawn from a source fairly representative of the community." *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975). To address the systematic, historical exclusion of minorities and other groups from jury service, Congress enacted the Jury Selection and Service Act of 1968. *See, e.g.*, *United States v. Slaughter*, 110 F.4th 569, 578 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1439 (2025). Among other things, the Jury Selection and Service Act ("JSSA")

guarantees litigants the right to juries that are "selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861.

Importantly, however, the Supreme Court has emphasized that there is "no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." *Taylor*, 419 U.S. at 538 (cleaned up). Instead, the representative requirement is structural: "the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id*. Accordingly, "*Taylor* and the JSSA, read together, guarantee both state and federal criminal defendants the right to a grand and petit (trial) jury selected from a pool of people that fairly represents the community in which they are being tried." *Slaughter*, 110 F.4th at 578.

A fair-cross-section challenge is assessed under the burden-shifting framework set forth in *Duren v. Missouri*, 439 U.S. 357 (1979). To establish a *prima facie* violation, a defendant must show: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren v. Missouri*, 439 U.S. 357, 364 (1979). Once a defendant satisfies all three of these elements, the burden shifts to the prosecution to show that a significant government interest is 'manifestly and primarily advanced by those aspects of the jury-selection process . . . that result in the disproportionate exclusion of a distinctive group." *Id*. at 367–68.

Measured against this legal standard, defendants' arguments will be rejected. As an initial matter, defendants' requests appear to be untimely and/or procedurally defective, possibly both.

*See United States v. Nix*, 264 F. Supp. 3d 429, 432–434 (W.D.N.Y. 2017) (explaining procedural requirements and timing limitations of a fair-cross-section challenge). But setting those threshold issues aside in light of their *pro se* status, neither defendant has even attempted to make the preliminary showing required of them by *Duren*. Nor could they do so. The prospective jurors called to serve in this case were randomly selected in accordance with the provisions of General Order 24 ("GO 24") of the Northern District of New York, which expressly incorporates the relevant provisions of the JSSA.[1]

The Court's Jury Plan establishes that "[w]hile voter registration lists represent a fair cross section of the community, an even greater number of citizens will be eligible for jury service if supplemental source lists are used." GO 24 at 4. "Accordingly, names of grand and petit jurors will be selected at random from voter registration lists of all counties in the relevant division and supplemented by lists of licensed drivers and New York State tax filers for these counties from the New York State Department of Motor Vehicles . . . and the New York State Department of Taxation and Finance." *Id*. "The selection of names from complete source list databases in electronic media for the master jury wheel will be accomplished by a purely randomized process through a properly programmed electronic data processing system." *Id*. at 5.

The Northern District of New York is comprised of thirty-two counties. This Court, seated in the Utica Division, draws its jury pool from five of those counties: Hamilton, Herkimer, Lewis, Oneida, and Otsego. GO 24 at 3. According to recent, publicly available census bureau data, these counties are predominantly white.[2] However, there is no evidence or other plausible indication that the jury pool called to serve in this case did not represent a reasonable and fair proportion of

---

[1] Jury Plan for the Random Selection of Grand and Petit Jurors, https://www.nynd.uscourts.gov/sites/nynd/files/general-orders/GO24.pdf (last accessed Sept. 15, 2026).

[2] https://www.census.gov/quickfacts/fact/table/ (last accessed Sept. 15, 2026).

the individuals across these five counties. In fact, the Second Circuit has rejected a fair-cross-section challenge to the Northern District's jury-selection process specifically as it pertains to the Utica Division jury pool. *See United States v. Plaza-Andrades*, 507 F. App'x 22, 25 (2d Cir. 2013) (summary order).

Even assuming defendants were otherwise able to show under-representation within the meaning of *Duren*, defendants have not made even a cursory showing that any under-representation is due to systematic exclusion of any distinctive group in the jury-selection process. As the Second Circuit has explained, showing under-representation in a particular venire, or even persistent under-representation in venires over a significant period of time, without more, is insufficient to show that the alleged under-representation is the result of systematic exclusion. *Slaughter*, 110 F.4th at 583. Instead, in addition to showing under-representation, a defendant must also point to specific practices or other "factors intrinsic to the jury venire selection process" that cause or contribute to the "identified and persistent disparities." *Id.*

Defendants' conclusory observations about the composition of this particular panel are insufficient to support even a colorable claim of "systematic exclusion." Thus, although the JSSA contemplates limited access to supporting documents when appropriate to support this kind of claim, 28 U.S.C. § 1867(f), trial courts have declined to stay proceedings or order disclosure related to this issue where, as here, the movant's claim necessarily fails to satisfy the *Duren* test. *See, e.g.*, *United States v. Walsh*, 884 F. Supp. 2d 88, 91 (S.D.N.Y. 2012) (holding same where "[d]isclosure of such jury selection information will both unnecessarily delay the resolution of this case and constitute a waste of time and resources for the parties involved"). Accordingly, defendants' fair-cross-section challenges will be denied.

### B. Jury Panel Taint or Pollution

Second, defendants argued that statements made during *voir dire* by a prospective alternate juror—who was ultimately dismissed for cause—unconstitutionally "tainted" the jury selection process and infected the whole venire.

The Sixth Amendment guarantees the right to trial "by an impartial jury." *United States v. Goklu*, 173 F.4th 16, 22 (2d Cir. 2026) (quoting U.S. Const. amend. VI.). "*Voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored." *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) (plurality opinion). "When conducting *voir dire*, the district court must, 'at a minimum, remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence.'" *Goklu*, 173 F.4th at 22 (quoting *United States v. Kelly*, 128 F.4th 387, 421 (2d Cir. 2025)).

To that end, "[a] juror should be removed if the district court concludes that he has 'actual bias,' that is, 'the existence of a state of mind that leads to an inference that the person will not act with entire impartiality.'" *Goklu*, 173 F.4th at 22 (quoting *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997)). "A district court can find actual bias if 'the juror admits partiality' or if 'the judge finds actual partiality based upon the juror's voir dire answers.'" *Goklu*, 173 F.4th at 22 (quoting *Torres*, 128 F.3d at 43); *see also United States v. Nieves*, 58 F.4th 623, 632 (2d Cir. 2023) (articulating other forms of juror bias and explaining that "there must be sufficient factfinding at voir dire to allow for facts probative of any of these forms of bias to reveal themselves").

Defendants are charged with fraud and identity theft offenses. To help ascertain any potential case-specific biases, the Court advised the prospective jury pool during *voir dire* that this case involves allegations of a scheme to defraud multiple government programs. As relevant here,

during the selection of alternates, a prospective juror responded by raising concerns regarding their ability to be impartial.

Specifically, the prospective alternate stated that she was unsure that she could be fair and impartial because she works in economic development and, as part of her employment, she and her colleagues routinely apply for government grant funding. She explained that she is familiar with the extensive work that goes into obtaining government grant funding and the importance of utilizing government funds for their intended purpose. She added that she did not know if she could be impartial towards individuals accused of misusing government funds.

The Court called a sidebar with the prospective alternate. There, on the record in the presence of the parties, the Court questioned this prospective juror further about her ability to be fair and impartial. Ultimately, the prospective juror was dismissed for cause with the consent of all parties. Immediately following her dismissal, the Court read the following curative instructions to the remaining members of the venire:

> Ms. Watts and Mr. Pino-Copete have pleaded not guilty to the charges against them, and as I explained before, the burden is on the government to prove each defendant's guilt beyond a reasonable doubt. That means the Government has to produce evidence which, considered in light of all the facts, leads you to believe that what the Government claims each defendant did is true beyond a reasonable doubt.
>
> The defendants do not have any burden to prove that they are not guilty. That means that the defendants have no burden to prove their innocence, to present any evidence, or even to testify. Since a defendant has the constitutional right to remain silent, the law prohibits you from arriving at your verdict by considering that the defendant may not have testified.
>
> As a final note, please keep in mind throughout these proceedings that the charges brought by the government are only accusations and nothing more. The defendants are presumed innocent of the charges and may not be convicted unless the jury unanimously agrees that the government has proved guilt beyond a reasonable doubt.

Notably, these instructions mirrored instructions previously given to the jury pool shortly before the start of *voir dire*. Thereafter, jury selection concluded and defendants lodged objections

to the jury as constituted. According to defendants, the single prospective juror's comments tainted the jurors who had already been selected, along with the remaining prospective alternates.

These arguments are rejected. "[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). But "[i]t is not required, however, that the jurors be totally ignorant of the facts and issues involved." *Id.* "In fact, even 'preconceived notion[s] as to the guilt or innocence of an accused' will not, on their own, 'rebut the presumption of a prospective juror's impartiality.'" *United States v. Htut*, 2025 WL 3552725, at *1 (2d Cir. Dec. 11, 2025) (summary order) (quoting *Irvin*, 366 U.S. at 723). Rather, "[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 723.

There is no indication whatsoever that the prospective juror's statements about her own life experiences deprived defendants of their Sixth Amendment rights. Defendants are not challenging the partiality of the prospective alternate who made the comment—she was appropriately dismissed for cause after a sidebar. Instead, defendants challenge the impartiality of the entire empaneled jury. Assuming for a moment that these individuals heard the prospective alternate's commentary on her professional experiences with seeking grant funding, there is no indication that any members of the jury or the jury pool were tainted or polluted as a result of these remarks.

First off, by the time that selection of alternates began, the Court had satisfied itself, through many hours of questioning over the span of two days, that the jurors selected to hear this case were fair and impartial. Throughout the *voir dire* examination, the Court instructed prospective jurors multiple times regarding the presumption of innocence and the burden of proof in a criminal case. The seated jury had survived rounds of peremptory challenges and challenges for cause, and all of its members had assured the Court and the parties that they could be fair and

impartial in this case. In addition, all of the jurors who were ultimately selected to serve affirmed under oath that they understood those legal principles, and that they had no difficulty accepting them or applying the Court's instructions to the facts of this case.

Against that backdrop, defendants have not identified any evidence tending to suggest that any empaneled juror heard the prospective juror's comments and formed an opinion, strong or otherwise, as to defendants' guilt. Even assuming that a particular juror might have been influenced by the prospective juror's comments, the Court's prompt and strongly worded curative instruction was sufficient to eliminate the potential for unconstitutional taint.

In sum, defendants have not carried their burden of showing "the actual existence" of partiality among jurors who, at most, overheard a stray comment from a prospective juror during *voir dire*. *See United States v. Htut*, 2025 WL 3552725, at *2 (finding that the defendant failed to show that the empaneled jurors were unconstitutionally tainted by isolated comments made during *voir dire* by three potential jurors who were not ultimately selected to serve). Accordingly, defendants' motion to dismiss will be denied.

Therefore, it is

ORDERED that

1. Defendants' motions challenging the composition of the jury pool are DENIED; and
2. Defendants' motions challenging the partiality of the empaneled jury are DENIED.

IT IS SO ORDERED.

Dated: September 16, 2026
Utica, New York.

Anthony J. Brindisi
U.S. District Judge